## Marmah, Inc. *v.* Town of Greenwich

Cotter, C. J., Loiselle, Bogdanski, Longo and Peters, Js.

Argued June 7—decision released September 12, 1978

*William T. Lapcevic,* for the appellant (defendant).

*Jay H. Sandak,* with whom, on the brief, were *Richard A. Silver* and *David S. Golub,* for the appellee (plaintiff).

PETERS, J. This case concerns the efforts of the plaintiff, Marmah, Inc., to construct a post office in Old Greenwich. Marmah presented a site plan to the defendant town's planning and zoning commission which the commission disapproved after a public meeting on December 19, 1972. Marmah timely appealed to the Court of Common Pleas which concluded that the site plan application had been arbitrarily denied. The town thereupon petitioned for certification by this court, and upon the grant of that petition, perfected its appeal, urging reversal of the trial court and dismissal of Marmah's appeal.

The theory on which this case was tried was that the commission had denied Marmah's application not in the exercise of reasonable judgment but rather as the result of predisposition and predetermination. Correlatively, Marmah alleged that it was never afforded a reasonable opportunity to be heard before the commission, and that the commission's assigned reasons for denying the site plan application were not proper.

Two separate but interrelated sets of factual allegations concerning predisposition and predetermination were proffered by Marmah and accepted by the trial court. Those allegations related on the one hand to the commission's exercise of its administrative power, to the manner in which it considered the application for the site plan; on the other hand, Marmah asked scrutiny of the commission's exer-

cise of its legislative power to amend the building zone regulations while the application for the site plan was pending.

Review by the trial court of the commission's administrative proceedings produced substantial factual evidence that Marmah's site plan application was not afforded a fair and reasonable hearing by the commission. The commission's overt consideration of the site plan was casual and perfunctory. The commission appeared to be favoring opponents of the application throughout the public meeting at which it was discussed. Representatives of the proponent, Marmah, were not permitted to question the representative capacity, or the technical credentials, of those who spoke or wrote in opposition to the application. There was no expert testimony about traffic, architectural design or building design, other than the *approvals* of Marmah's application by the defendant town's traffic department, architectural review board, and building department. Nonetheless, the commission voted to disapprove the site plan on the grounds of increased traffic and unsatisfactory parking layout, as well as the absence of a request for new facilities by the postal authorities. The test for review of commission administrative proceedings is " 'whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations.' " *Goldberg* v. *Zoning Commission,* 173 Conn. 23, 25–26, 376 A.2d 385 (1977). The trial court reasonably concluded that in this case the commission failed to provide proper reasons for denying the site plan application, and that the reasons that were provided were not substantiated by the evidence before the commission. This con-

clusion strongly supports Marmah's general claim of predisposition and predetermination. *Pecora* v. *Zoning Commission,* 145 Conn. 435, 444, 144 A.2d 48 (1958); *Couch* v. *Zoning Commission,* 141 Conn. 349, 357, 106 A.2d 173 (1954).

Review by the trial court of the commission's legislative actions led the court to conclude that the deficiencies in the administrative proceedings were not, as the town urged, superseded by the commission's subsequent amendment of the building zone regulations which, as amended, made a post office an impermissible use. The effect of this change in the zoning is the central issue on this appeal. Before we reach it, we can usefully dispose of the town's alternate argument that even the building zone regulations as they existed at the time of Marmah's site plan application did not permit Marmah's contemplated use.

In November, 1972, when Marmah first formally applied to the commission for site plan approval for the post office, the Greenwich building zone regulations contained the following provision governing the R-12 zone in which Marmah's property is located: Section 6 (a) (2) permitted use for "[s]treets, parks, playgrounds, public school grounds and other buildings and lands of town, state or federal government, used for public purposes." The town now urges that the language "buildings and lands of . . . federal government" excludes Marmah because it is Marmah, and not the federal government, that owns and controls the building site. Whatever the intrinsic merits of this reading might be, the argument is not properly before us. Illegality of use was not among the stated reasons advanced by the commission for its site plan dis-

approval. Nor can illegality of use fairly be said to be implied in the commission's third reason for disapproval, "[t]he post office neither directly requested nor was a need demonstrated for the new facilities." As this court held in *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 541, 271 A.2d 105 (1970), "where a zoning commission has formally stated the reasons for its decision the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." The court, therefore, did not err in concluding that Marmah's site plan represented a proposal for a permitted use within § 6 (a) (2) when Marmah's application was denied on December 19, 1972.

This case turns, therefore, on the effect to be given to the amendment by the commission of its building zone regulations. As amended, § 6 (a) (2) prohibits the use of Marmah's land as a post office.[1] The town argues here, as it did in the trial court, that the change in the zoning regulations makes the appeal moot and deprives the court of jurisdiction to hear it.

Zoning regulations are, as this court stated in *Edward Balf Co.* v. *East Granby,* 152 Conn. 319, 323, 207 A.2d 58 (1965), "presumed to be for the welfare of the entire community." "A landowner does not have a vested right in the existing classification of his land. On the contrary, the enabling acts which authorize the enactment of zoning ordi-

[1] Section 6 (a) (2) now permits only "[s]treets, parks, playgrounds, public school grounds and town buildings and uses."

nances provide for the amendment of such ordinances. A landowner's right to establish a particular use can be summarily terminated by an amendment which reclassifies his land and outlaws the use in question." 1 Anderson, American Law of Zoning (2d Ed. 1976) § 6.20. A landowner does not obtain a vested right in what has subsequently become a nonconforming use by filing a plan or by applying for a construction permit. 1 Anderson, op. cit. §§ 6.21, 6.23. Even the issuance of a building permit does not necessarily create a vested right unless the building is substantially under construction before zoning regulations are amended. *Graham Corporation* v. *Board of Zoning Appeals,* 140 Conn. 1, 4–6, 97 A.2d 564 (1953); see annot., 49 A.L.R.3d 13 (1973).

The specific issue before us is whether, in this case, legislative power was in fact exercised to promote the general welfare, or was instead invoked for the primary purpose of precluding Marmah from using its property to build a post office. On an allegation of predisposition and predetermination, which attacks the motivation behind the commission's legislative action, the court cannot be precluded from its inquiry by the flat assertion of legislative power. *McCormick* v. *Planning & Zoning Commission,* 146 Conn. 380, 382, 151 A.2d 347 (1959). The court was clearly correct, in these circumstances, in taking the jurisdictional plea under advisement and in hearing testimony about its merits. It was not automatically bound to apply the zoning regulations as of the time of the appeal. Furthermore, it was entitled, on this essentially equitable inquiry, to hear testimony about the process of amendment and to admit into evidence the transcript of the relevant public hearing.

*Schwartz* v. *Town Planning & Zoning Commission,* 168 Conn. 285, 288, 362 A.2d 1378 (1975); *Stiles* v. *Town Council,* 159 Conn. 212, 217, 268 A.2d 395 (1970); *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 241, 196 A.2d 427 (1963); *Beach* v. *Planning & Zoning Commission,* 141 Conn. 79, 80, 103 A.2d 814 (1954).

The court found the following interplay between Marmah's site plan application and the commission's amendment of the building zone regulations:

(1) In the spring of 1972, Marmah contacted town officials with regard to the proposed site plan application.

(2) On November 8, 1972, a formal site plan application was denied without prejudice because the application did not have the approval of the architectural review board.

(3) On November 21, 1972, the commission scheduled a public hearing for December 19, 1972, to hear a staff proposal to amend the building zone regulations to delete Marmah's proposed use.

(4) On December 4, 1972, a meeting scheduled for that day to consider Marmah's site plan application (with the approval of the architectural review board) was canceled; the reason given for the cancellation was the absence of a quorum.

(5) On December 5, 1972, a legal notice was published in the Greenwich Times, dated December 4, 1972, giving public notification of a public hearing on the proposed zone regulation change on December 19, 1972.

(6) Some time after December 5, 1972, Marmah was notified that its site plan application had been rescheduled for December 19, 1972.

(7) On December 19, 1972, the commission conducted a public hearing on proposed changes in the building zone regulations and a public meeting on site plans. Marmah's site plan was disapproved the same evening.

(8) On January 3, 1973, Marmah appealed from the disapproval of its site plan.

(9) On April 6, 1973, § 6 (a) (2) of the building zone regulations was amended; the final version of the amended regulations prohibited use for federal governmental purposes and not, as originally proposed, town buildings.

In the light of those findings, combined with the findings of the unfairness of the hearing itself, the trial court could reasonably conclude that this zoning amendment was enacted primarily for the purpose of preventing the plaintiff from going forward with its contemplated building project. In such circumstances, it is inequitable to allow the changed building zone regulations to act as a bar. *Zoning Commission* v. *New Canaan Building Co.*, 146 Conn. 170, 176–77, 148 A.2d 330 (1959) ; and see *MacKenzie* v. *Town Planning & Zoning Commission*, 149 Conn. 678, 686, 183 A.2d 619 (1962); *State ex rel. Humble Oil & Refining Co.* v. *Wahner*, 25 Wis. 2d 1, 130 N.W.2d 304 (1964).

Courts should not lightly interfere in either the administrative or the legislative determinations of a duly constituted zoning commission. Where, however, the findings of fact support the conclusion that the commission acted with predisposition and pre-

determination, the commission's actions are capricious, unreasonable and illegal, and cannot be allowed to stand.

There is no error.

In this opinion the other judges concurred.