[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is the one of four appeals taken from the action of the Watertown Planning Zoning Commission (hereinafter "Commission") in connection with certain amendments to the zoning regulations that were approved on November 12, 1997. The court heard oral argument on all of the cases on the same day and will issue its opinions on each case today. Many of the facts as to the action of the Commission and the record in general is the same in all of the cases and therefore the court will not repeat in each opinion the findings or observation made but will make reference toSarlom v. Watertown Planning Zoning Commission, Superior Court, judicial district of Waterbury, Docket No. 143368 (May 19, 1999,Pellegrino, J.) where appropriate.
 THE COMMISSION'S ACTION
The Commission sought to amend its zoning regulations pertaining to its business districts. When a zoning commission acts to amend its regulations, it acts as a legislative body.First Hartford Realty Corp. v. Plan Zoning Commission of theTown of Bloomfield, 165 Conn. 533, 540, 338 A.2d 490 (1973) "The test of the action of the commission is two-fold: (1) The zone change must be in accord with a comprehensive plan. and (2) it must be reasonably related to the normal police power purposes enumerated in [General Statutes § 8-2. . . . A comprehensive CT Page 7880 plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community. . . ." (Citations omitted.) Id., 541. In reviewing the action of the commission on appeal, the question for the court is whether the decision is supported by substantial evidence.
On November 12, 1997 the Commission voted to amend its regulations regarding the permitted size of retail businesses in all business zones. In the Central Business District (B-C) the permitted use was reduced from a Gross Floor Area ("GFA") of 20,000 sq. ft. to a maximum GFA of 10,000 sq. ft. with a special permit use from over 20,000 sq. ft. to a maximum of 20,000 sq. ft. For the Shopping Center Business District (B-SC), a permitted use was reduced from an unlimited GFA to a maximum GFA of 20,000 sq. ft., and in the General Business District (B-G), a permitted use was reduced from an unlimited GFA to maximum GFA of 10,000 sq. ft. and a special permit use to a maximum GFA of 20,000 sq. ft. The Commission held a public hearing on November 12, 1997 and voted to adopt the proposed changes. Notice of the decision of the Commission was published in the Waterbury Republican-American on November 14, 1997, to take effect on November 17, 1997.
 SAMBEN REALTY CO., INC.
The plaintiff, Samben Realty Co., is the owner of real property located in the Shopping Center Business District (B-SC) in the Town of Watertown. The plaintiff argues that (1) the zoning amendments are not supported by the plan of development or a comprehensive plan; (2) that there is not substantial evidence in the record to support the amendments; (3) the scope of the amendments exceeds authority authorized by the police powers; (4) the amendments constituted an unconstitutional taking of the plaintiff's property; (5) the commission prejudged the amendments; (6) and the amendments are void for vagueness.
In this case, as well as the other appeals, the court must first decide the issue of aggrievement in order to acquire subject matter jurisdiction. Jolly, Inc. v. Bridgeport ZoningBoard of Appeal, 237 Conn. 184, 676 A.2d 831 (1996); Walls v.Planning Zoning Commission, 176 Conn. 475, 408 A.2d 252 (1979). CT Page 7881 The defendant in this case, as in the other matters, has stipulated that there is aggrievement and therefore the court will find, based on the stipulation of both parties, that the plaintiff is aggrieved.
 DISCUSSION
I The Plan of Development and The Comprehensive Plan
"In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . The trial court may not retry the case or substitute its judgment for that of the agency. (Citation omitted; internal quotation marks omitted.) Smith v Zoning Boardof Appeals, 227 Conn. 71, 80-81, 629 A.2d 1089 (1993).
The plaintiff argues that the zoning amendments do not comply with the plan of development or the corridor study because the latter do not call for "limitations on retail growth, for limits on building size, for economic impact studies, or for additional sidewalk construction by developers in order to reduce reliance on automobile transportation." (Plaintiff's Brief, filed December 15, 1998, p. 14.) The plaintiff further argues that square footage restrictions may have no bearing on aesthetic considerations and that large buildings may not necessarily create more traffic than smaller buildings. As to the Comprehensive Plan, the plaintiff refers to the zoning regulations themselves and argues that these amendments do not conform to the stated intent and purpose of the regulations.
"Zoning regulations are . . . presumed to be for the Welfare of the entire community." (Internal quotation marks omitted.)Marmah v. Town of Greenwich, 176 Conn. 116, 120, 405 A.2d 63
(1978). As long as the amendments support the comprehensive plan and are related to the police powers enunciated in § 8-2, the action will be upheld. A plan of development is merely advisory for zoning changes. "It is evident that the commission was concerned about the impact of further commercial development on the community. It is immaterial that the plan of development was never formally amended to incorporate the recommendation of the commercial study. . . . For the plan of development . . . is . . . merely advisory so far as zoning is concerned. . . ." (Citations omitted.) First Hartford Realty Corp. v. Planning ZoningCommission, supra, 165 Conn. 542. CT Page 7882
The amendments support the comprehensive plan, which in this case is found in the zoning regulations themselves. Article I of the regulations states the intent and purpose of the regulations. The objectives as stated in Section 1 include, inter alia, the prevention of overcrowding of the land and the avoidance of an undue concentration of population; the protection and conservation of "the character, the environment and the social and economic stability of all parts of the Town"; the encouragement of "the orderly and beneficial development of the Town" . . . and the promotion of "the most beneficial relationship of streets and traffic circulation throughout the Town and the arrangement of land uses, having particular regard for the minimizing of congestion in the streets and the promotion of safe and convenient vehicular and pedestrian access appropriate to the various uses throughout the Town. . . ." (Record #19. pp. 1-2.)
The stated purposes of the various business districts are the following: "To encourage the orderly development of a shopping area for the Town which provides the opportunity for creative and flexible architectural design, the sound interrelationship of buildings and open spaces, pedestrian and vehicular circulation, landscaping, parking areas and business uses and to carry out the recommendations and proposals for circulation and use contained in the duly adopted plans and policies of the Commission"; (Record #19, Section 31 — Central Business B-C District, p. 63); "to accommodate retail stores and service establishments primarily serving the neighborhood needs of Town residents"; (Record #19, Section 32 — Local Business B-L District, p. 66); "to accommodate unified development of planned commercial facilities to serve a local and regional market"; (Record #19, Section 33 — Shopping Center Business B-SC District, p. 69); and "to accommodate larger retail and service establishments primarily serving the needs of the entire Town and neighboring communities." (Record #19, General Business B-G District, p. 71.).
There is ample evidence in the record demonstrating that the amendments are consistent with the comprehensive plan. One member of the commission stated that the zoning amendments were "very much in keeping with what was looked at in the original Plan of Development, as well as the corridor study which was done at the same time. The Commission is looking at all of the Business Districts in the community to bring them more into line with what the vision for the community was as expressed in the Plan of CT Page 7883 Development. There have been concerns for a long period of time about the effect on the community if all of the commercial areas in Town were allowed to develop based on what had been permitted by the regulations." (Record #14.)
The record illustrates concerns regarding, traffic, congestion, and the impact of stores exceeding 10,000 square feet, particularly with regard to parking. (Record #2.) The comments from members of the public demonstrate the desire to maintain the community character in Watertown by protecting the appearance of commercial areas, providing for sidewalks, and limiting commercial activity through maximum square footage requirements that could lead to urban blighted areas. (Record #13.) These concerns fit within the stated purposes of the zoning regulations. Thus, the court finds that there is ample evidence in the Record to find that the amendments are consistent with the comprehensive plan.
II Reasons on the Record
The plaintiff argues that the Commission stated its reasons for the zoning amendments on the record, and that such reasons were that the amendments were in conformance with the Plan of Development and the Corridor Study, and that the amendments will protect the downtown commercial area from competition.
"It is the duty of a reviewing court to search the record before it for evidence supporting the decision of a local zoning board. . . ." DeBeradinis v. Zoning Commission, 228 Conn. 187,198 n. 7, 635 A.2d 1220 (1994). "In [Samperi v. Inland WetlandsAgency, 226 Conn. 579, 628 A.2d 1286 (1993)], we recognized that [c]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions . . . Such caution is particularly appropriate when reviewing the decision of a local land use commission composed of laypersons whose procedural savoir-faire may not rise to the sophisticated level needed to achieve strict compliance with the statutory directions under which they operate. . . ." (Citations omitted; internal quotation marks omitted.) DeBeradinis v. ZoningCommission, supra, 228 Conn. 198 n. 7.
"In Parks v. planning Zoning Commission, 178 Conn. 657,661-62, 425 A.2d 100 (1979), . . . we further stated that [i]f any reason culled from the record demonstrates a real or CT Page 7884 reasonable relationship to the general welfare of the community, the decision of the commission must be upheld. . . ." (Citations omitted; internal quotation marks omitted.) Paige v. Townplanning Zoning Commission, 235 Conn. 448, 464, 668 A.2d 340
(1995).
The commission did not formally state the reasons for its decision on the record. The court reviewed the record and finds that it supports the action taken by the commission. The minutes of the July 23, 1997 meeting show that traffic was a topic of concern. Specifically, there was a discussion regarding large stores as considerable traffic generators. "Mr. Adams commented that with anything over 20,000 sq. ft., you are going to [need to] control the type of traffic generated and the types of uses so that you don't end up with large traffic generators. . ." (Record #2, p. 3.) Two other members of the commission agreed. (Record #2, p. 3.) A regulation limiting the floor size of commercial buildings was a method the commission proposed to control traffic and congestion. There were also concerns regarding the number of parking spaces allowed per building and the estimated traffic. (Record #2, p. 3.) Such concerns also included local street impact within a half mile radius. (Record #2, p. 4.) In regard to the amount of retail activity allowed, the zoning and planning official stated that "retail usually generates more traffic . . . [and that she was thinking] in traffic generation terms." (Record #2, p. 5.)
At the hearing held on November 12, 1997, the people in attendance supported this concept. Joseph Masi, a former member of the commission, agreed that regulating the size of stores would preclude "megastores that cause all kinds of environmental impact problems." (Record #13). Mr O'Sullivan testified that it would be an "overall improvement to the main corridor" of Town that they attempt to not have very large development in the commercial area with the associated traffic. (Record #13). There were no members of the general public in attendance that spoke against the proposed regulations.
It is clear from the comments made by the commissioners at the special session, the meeting of the commission that was held after the public hearing, that they supported the proposed regulations because they were designed to reduce traffic and benefit the Town of Watertown in general. The chairperson, Ms. Wick, commented that "as brought out in the public discussion" the commission is trying to bring back the Main Street community CT Page 7885 feel instead of development by the automobile. (Record #14). Commissioner Adams commented that he was one of the biggest advocates of proposals because the big stores and the "magnets" that they draw cause a blighted downtown. He commented on the traffic congestion and wondered whether the area affected by the regulations should be expanded. (Record #14). Commissioner Gallo supported the amendments because he did not want developers to come in and "complicate our traffic situation even more." (Record #14)
"An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . ." (Citations omitted.) New England CableTelevision Assn. v. Dept. of Public Utility Control,247 Conn. 95, 118, ___ A.2d ___ (1998). "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule. . . ." (Citations omitted; internal quotation marks omitted.) Connecticut Light Power Co. v. Dept. of PublicUtility Control, 216 Conn. 627, 639-40, 583 A.2d 906 (1990). The court, after reviewing the record, finds that there is substantial evidence to support the amendment of the regulations.
III Police Powers
"Zoning is an exercise of the police power. Zoning regulates the use of land irrespective of who may be the owner of such land at any given time and is defined as a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use for the properties. . ." Builders ServiceCorp. v. Planning Zoning Commission, 208 Conn. 267, 274,545 A.2d 530 (1988).
In order for a zone change to be upheld, it must be in conformance with a comprehensive plan and reasonably related to the "normal police powers enumerated in [General Statutes § 82." First Hartford Realty Corp. v. Planning ZoningCommission, supra, 165 Conn. 541. "In the absence of a formally adopted comprehensive plan, a town's comprehensive plan is to be found in the scheme of the zoning regulations themselves . . . (Citations omitted; internal quotation marks omitted.) ProtectHamden/North Haven v. Planning and Zoning Commission, CT Page 7886220 Conn. 527, 551, 600 A.2d 751 (1991).
Section 8-2, the enabling statute, provides in pertinent part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures . . . the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes. . . . Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation. . . ." General Statutes § 8-2 (a).
The plaintiff argues that the maximum square footage requirements are not supported by the record because there is not necessarily a connection between the size of a building and the amount of traffic generated; that the maximum percentage of retail uses is based on efforts to curb competition; and that pedestrian access goals may not be achievable.
The record shows that the concerns raised by the commission and members of the public included traffic, congestion, and urban blight. The police powers enunciated in § 8-2 specifically address such concerns. Our Supreme Court has held that traffic considerations are within the police powers conferred by §8-2. "One of the proper purposes of zoning enumerated in [§]8-2 is to lessen congestion in the streets." (Internal quotation marks omitted.) First Hartford Realty Corp. , supra,165 Conn. 544; see also Protect Hamden/North Haven, supra, 220 Conn. 549. The amendments are reasonably related to police powers.
Moreover, § 8-2 has been held to specifically allow size restrictions on property. "Our conclusion is that [§ 18-2 authorizes the enactment of minimum floor regulations not only from the `size of buildings' language but also because this conclusion is reasonable in the light of the entire statutory purpose of [§ 118-2 in the statutory zoning scheme. Therefore, the commission's authority to enact a regulation prescribing minimum floor area requirements is not . . . beyond its power under the zoning enabling act in General Statutes 8-2."Builders Service Corp. v. Planning Zoning Commission,208 Conn. 267, 277, 545 A.2d 530 (1988). Drawing from the reasoning in CT Page 7887Builders Service Corp. , the court in Savings Bank of Rockvillev. Town of Tolland, Superior Court, judicial district of Tolland at Rockville, Docket No. 659682 (Nov. 20, 1996, Klaczak, J.) upheld maximum floor space regulations stating, "if a commission can regulate the minimum floor area, a commission can limit the maximum floor area of the use of a parcel." The court went on to conclude that a regulation may properly aim to curb traffic congestion under the enabling statute. Id.
III Predetermination and Taking
The issues of predetermination and taking were addressed inSarlom v. Watertown Planning Zoning Commission, supra, Superior Court, Docket No. 143368. The court incorporates the reasoning and findings contained therein.
As to the issue of pedestrian access and sidewalk construction, the plaintiff argues that the amendments constitute an unconstitutional taking of its property. The purpose of such provisions appears to be to allow safe pedestrian access to retail stores. According to the record, the creation of more sidewalks is intended to decrease the amount of vehicular congestion in the area. These amendments clearly pertain to the health, safety and general welfare of the community as a whole and are included in the broad police powers enumerated in §8-2.
The plaintiff incorrectly interprets the regulations to require businesses "to build sidewalks for unlimited distances along public highways"; (Plaintiff's Brief, dated April 3, 1998, p. 29); and to contribute to "a massive construction project to provide sidewalks along public highways as far as necessary. . ." (Plaintiff's Brief, dated April 3, 1998, p. 30.) Further, the plaintiff misinterprets the plain meaning of the regulations and argues that the town seeks to impose upon businesses responsibility for the construction of a pedestrian sidewalk system.
In fact, Section 35.7.1 provides in pertinent part: "All retail businesses shall provide sidewalks along the front of theproperty to the main entrance to the building. . . . The location of sidewalks shall be consistent with existing sidewalks (if any) within one hundred (100) feet of the property." (Emphasis added.) There is no requirement for each business to construct sidewalks for unlimited distances. Section 35.7.2 CT Page 7888 requires applicants to provide a plan for increasing pedestrian traffic to the business if less than ten percent of total patrons are pedestrians, or the construction of additional sidewalks to the site. The regulation thus is read in the disjunctive; an applicant must submit "a plan" for pedestrian access, or make the business more accessible to pedestrians.
The aim of the commission was to ensure pedestrian access to businesses. The construction of sidewalks adjacent to businesses is designed to improve public safety so that pedestrians have a safe travel path and can avoid hazardous conditions. These goals are within the police powers enumerated in § 8-2.
IV Vagueness
"The standard for determining the adequacy of subdivision regulations is whether they are reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. . . ." Smith v. Zoning Board of Appeals,227 Conn. 71, 93, 629 A.2d 1089 (1993), cert. denied,510 U.S. 1164 (1994). The burden of proving that the zoning amendments in this case are "impermissibly vague as applied to the facts" rests with the plaintiff. Felsman v. Zoning Commission,31 Conn. App. 674, 681, 626 A.2d 825 (1993) "It is well established that, as a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . ." (Citations omitted; internal quotation marks omitted.) Spero v.Zoning Board of Appeals, 217 Conn. 435, 446, 586 A.2d 590 (1991) (noting that generally the constitutionality of zoning regulations is addressed in independent proceedings, such as declaratory judgment actions).
The plaintiff argues that portions of the zoning amendments are "utterly incapable of interpretation or application, " however the court finds that the plaintiff failed to meet the burden of demonstrating that the regulations are impermissibly vague.
Common sense must be employed in construing the words of a regulation. Smith v. Zoning Board of Appeals, supra,227 Conn. 92. The standard to be applied is whether the regulation is reasonably precise and "reasonably adequate and sufficient to guide the commission and to enable those affected to know their CT Page 7889 rights and obligations. . . ." (Citations omitted; internal quotation marks omitted.) Id., 93. The court finds the regulations are not impermissibly vague.
CONCLUSION
For the aforementioned reasons, the plaintiff's appeal is dismissed.
PELLEGRINO, J.